UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>TREVORN RENAL PARKINS,<br><br>Defendant. | **OPINION AND ORDER**<br><br>25-CR-00273 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Defendant Trevorn Parkins ("Parkins") moves *pro se* seeking early termination of his supervised release. (Doc. 4, the "Motion"). On May 12, 2026, the Government filed a letter opposing the Motion. (Doc. 6, "Gov't Opp."). On May 28, 2026, Mr. Parkins filed a reply letter in further support of his Motion. (Doc. 7, "Reply").[1] On May 28, 2026, the Probation Office also forwarded to the Court a letter from Tyler Jansen at Empire State Forensics, prepared at the request of Mr. Parkins, summarizing the status of his outpatient therapy program.

For the reasons set forth below, the Motion is DENIED.

## BACKGROUND[2]

On April 12, 2013, the mother of a 12-year-old girl (herein "DT") reported her missing to the Pennsylvania State Police ("PSP"). (PSR ¶ 4). A search of DT's cellular telephone showed calls with a number associated with Mr. Parkins. (*Id.* ¶ 5). On April 13, 2013, Mr. Parkins, then 21-years-old, admitted to law enforcement that he met a 12-year-old girl and they talked. (*Id.* ¶ 6). Mr. Parkins denied knowing DT's whereabouts. (*Id.*). In fact, Mr. Parkins had DT leave his

---

[1] Citations to the parties' filings correspond to the pagination generated by ECF.

[2] The Court draws the background facts principally from the record of the underlying criminal proceeding, including the Presentence Investigation Report ("PSR") dated November 3, 2014, prepared by the Probation Office in the Middle District of Pennsylvania in connection with Mr. Parkins' sentencing ("PSR"), and the parties' submissions.

apartment after being contacted by PSP because he anticipated police would come looking for her. (*Id.* ¶ 12).

On April 14, 2013, Buffalo Police received a report that Mr. Parkins was at the residence of his "on and off" girlfriend. (*Id.* ¶ 11). Buffalo Police responded to the residence and found DT hiding in a closet. (*Id.*). During an interview with law enforcement, Mr. Parkins initially claimed that DT had come to Buffalo on her own but eventually admitted that he had travelled to Pennsylvania on April 12, 2013 and transported DT to his house in Buffalo. (*Id.* ¶ 12). Mr. Parkins also admitted that he had sexual intercourse with DT twice, knowing that she was only 12 years old. (*Id.* ¶¶ 12, 14). Mr. Parkins stated that he knew he made a mistake and got "caught up in the moment." (*Id.* ¶ 14).

On July 13, 2014, Mr. Parkins pled guilty before The Honorable Sylvia H. Rambo in the Middle District of Pennsylvania to Count One of Indictment 1:13-cr-00082 (M.D. Pa.), charging him with Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). (*Id.* ¶¶ 1-2). On November 19, 2014, Judge Rambo sentenced Mr. Parkins to a term of 101 months' imprisonment, which reflected a 19-month downward adjustment from the 120-month mandatory minimum sentence to account for time he served in state custody on related charges of attempted rape, to be followed by 10 years' supervised release, inclusive of the five-year mandatory minimum term. (*Id.* ¶¶ 30, 50, 52; Doc. 2). Among other things, Parkins' conditions of supervised release require him to "comply with the requirements of the Sex Offender Registration and Notification Act," "participate, at [his] expense, in a sex offender treatment program," "not associate with children under the age of 18" (with limited specified exceptions), "not reside or loiter within 1,000 feet of places where children under the age of 18 congregate," "have no contact, by any means, with DT," "comply with the terms and conditions set forth in the

2

Computer Monitoring/Filtering Participant Agreement in the Middle District of Pennsylvania," and "submit his person, residence, office, or vehicle to search conducted by a United States Probation Officer . . . based upon reasonable suspicion of contraband or evidence of a violation of condition of release." (Doc. 2 at 4).

According to Mr. Parkins and the Government, Mr. Parkins' 10-year term of supervised release began once he was released from federal custody on January 19, 2022. (Motion at 1; Gov't Opp. at 2). On June 13, 2025, the case was transferred from the Middle District of Pennsylvania to the Southern District of New York and assigned to the undersigned. (Doc. 1).

## STANDARD OF REVIEW

The Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). When assessing a motion for early termination of supervised release, the Court must also consider certain § 3553(a) factors. *See United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997).[3] These factors include "general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *Id.* at 35.[4]

A district court is not required "to make specific findings of fact with respect to each of the Section 3553(a) factors." *United States v. Torres*, No. 21-2511-cr, 2022 WL 17087048, at *3 (2d Cir. 2022). "[A] statement that the district court has considered the statutory factors is sufficient." (*Id.*). The Court must also make an "individualized assessment of the need for ongoing

---

[3] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

[4] 18 U.S.C. § 3583(e) provides that a district court may terminate a term of supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)".

3

supervision" under the November 2025 Sentencing Guidelines. *See* U.S.S.G. § 5D1.4(b). The Sentencing Commission in the November 2025 Sentencing Guidelines amendments also issued a policy statement outlining a non-exhaustive list of factors that courts may wish to consider when determining whether to terminate supervised release. *See* U.S.S.G. § 5D1.4(b), comment n.1(B).[5]

"The burden of proof for establishing entitlement to early termination of supervised release lies with the defendant." *United States v. Weiss*, No. 21-CR-00457, 2022 WL 3214914, at *2 (S.D.N.Y. Aug. 9, 2022). "Early termination is not warranted as a matter of course, and decisions regarding termination of supervised release are within the discretion of the district court." *United States v. Fernandez*, No. 10-CR-00905, 2025 WL 3687434, at *1 (S.D.N.Y. Dec. 19, 2025). "Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

---

[5] These factors are:

> (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; (vi) and whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4(b), comment n.1(B).

4

The Second Circuit, in *Lussier*, observed that "[o]ccasionally, changed circumstances-for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release" may justify modification of the terms of supervised release. 104 F.3d at 35. Courts in this Circuit have consistently declined to grant motions for termination of supervised release where defendants have "done nothing more than what is expected of all criminal defendants." *United States v. Liriano*, No. 91-CR-00908, 2010 WL 532517, at *1 (S.D.N.Y. Feb. 11, 2010); *see also United States v. Tirado*, No.15-CR-00487-5, 2026 WL 1088721, at *3-4 (S.D.N.Y. Apr. 22, 2026) ("Compliance with the terms of supervised release is to be expected and is not a basis alone to terminate supervised release" absent "extraordinarily good behavior or unforeseen circumstances"); *United States v. Berrios*, No. 95-CR-00084, 2010 WL 1010022, at *2 (S.D.N.Y. Mar. 16, 2010) (denying early termination of supervised release because defendant's good conduct was not "exceptional" or "new or unforeseen").

The Second Circuit has also clarified that "[s]o long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). Accordingly, "the plain language of *Lussier* . . . does not require new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that changed circumstances may in some instances justify a modification." (*Id.*)..[6]

---

[6] Defendant points out the Sixth Circuit has opined that certain courts "seem to have gotten the idea that the statute [authorizing early termination of supervised release] invariably demands a showing of exceptionally good behavior from *United States v. Lussier*," even though the *Lussier* case involved a modification of supervised release under 18 U.S.C. § 3583(e)(2) rather than an early termination of supervised release under 18 U.S.C. § 3583(e)(1). *United States v. Hale*, 127 F.4th 638, 641 (6th Cir. 2025).

Based on the conduct of the Defendant, the interest of justice, and the pertinent § 3553(a) factors, the Court finds that early termination of supervised release is not appropriate under 18 U.S.C. § 3583(e)(1).

## ANALYSIS

As an initial matter, although not raised by the parties, the Court assumes "that it has authority under 18 U.S.C. § 3583(e)(1) to terminate even a mandatory minimum term of supervised release early." *United States v. Diaz*, No. 14-CR-00108, 2025 U.S. Dist. LEXIS 131363, at *2 (S.D.N.Y. July 10, 2025). Therefore, notwithstanding that Defendant has not yet served the mandatory minimum five-year term of supervised release, the Court will evaluate the merits of Mr. Parkins' request.[7]

### I.    The Parties' Positions

Mr. Parkins asserts that the Court should immediately terminate his supervised release because (1) he has completed over four years of supervised release; (2) his conduct in maintaining continuous employment, fully complying with his supervised release terms, and rebuilding his relationship with his family supports early termination; (3) exceptional circumstances are not required to justify terminating supervised release; and (4) the 3553(a) factors favor early termination. Specifically, Mr. Parkins argues that from July 2023 to March 2025, he was employed at Michael's Arts and Crafts. (Motion at 2). Since March 16, 2025, he has worked as a Sandblaster and Industrial Painter at Surface Prep Pros. (*Id.*). He has not had any infractions with his probation officer or law enforcement while on supervised release and he has maintained family stability. (*Id.* at 2, 4). Mr. Parkins further states that deterrence is no longer necessary, he poses no threat to

---

[7] Mr. Parkins' mandatory minimum five-year term of supervised release expires on January 19, 2027 while his ten-year term of supervised release ends on January 19, 2032.

6

public safety, and he has achieved rehabilitation. (*Id.* at 4-5). Tyler Jansen at Empire State Forensics confirms that the probation officer referred Mr. Parkins for mandated specialized therapy in February 2022. Mr. Parkins currently participates in weekly group therapy sessions and monthly individual sessions. Mr. Parkins' attendance at therapy has been exemplary and he has made significant progress towards his therapeutic goals. He remains a low-risk individual and is on track for successful completion of his treatment.

The Government opposes Mr. Parkins' request for early termination of supervised release. (*See* Gov't Opp). The Government and Probation Office both acknowledge Mr. Parkins' positive adjustment to supervision and full compliance with his release conditions. (Gov't Opp. at 4). Probation confirms that Mr. Parkins participates in individual and group sex offense specific treatment with Empire State Forensics. (*Id.*). His schedule is considered a step down from the traditional treatment schedule for individuals convicted of sex offenses. (*Id.*). This step-down schedule is "reflective of his consistent engagement and progress thus far, particularly regarding the topics of healthy sexual behavior, relationships & emotional management." (*Id.*). Mr. Parkins is also in a relationship with an age-appropriate female. (*Id.*).

The Probation Office does not normally take a position on early termination requests for individuals convicted of a sex offense. (*Id.*). Probation believes that Mr. Parkins' progress and compliance with supervision to date is a result of the benefits he has gained while on supervision and complying with restrictions such as utilizing a non-internet capable cellphone and not having access to a home computer. (*Id.*). "Therefore, despite his strong compliance, the Probation Office believes there is still room for additional progress to be made from which Mr. Parkins would greatly benefit." (*Id.*).

7

II.    The Relevant Factors Do Not Warrant Early Termination of Supervised Release

Based on the Court's consideration of the relevant factors under Section 3553(a), in particular the serious nature of Mr. Parkins' offense, the need to avoid unwarranted sentencing disparities, the need to provide medical care in the most effective manner and the need to continue to protect the public, and the application note to Section 5D1.4(b),[8] early termination of Mr. Parkins' supervised release is not warranted at this time. Nor is it in the interest of justice.

The Government correctly highlights that the underlying offense was "vile and dangerous, and it weighs heavily in favor of continuing Parkins' supervised release." (Gov't Opp. at 5). Mr. Parkins developed a relationship with a twelve-year-old girl online. (PSR ¶¶ 4, 6, 10, 14). Their relationship did not remain online, however, as Mr. Parkins traveled from Buffalo to Pennsylvania to transport the minor victim to his residence where he had sex with her twice. (*Id.* ¶¶ 6, 9, 10, 12, 14). Mr. Parkins also obstructed justice by lying to the police about the minor victim's whereabouts during law enforcement's investigation. (*Id.* ¶¶ 12, 16).

Mr. Parkins argues that the Government erroneously focuses on the gravity of the offense and retribution rather than his current conduct and future risk assessment. (Reply at 2-3). Mr. Parkins ignores, however, that the Court is required to consider the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1) in evaluating whether early termination of supervised release is appropriate. *See* 18 U.S.C. § 3583(e). The serious nature of a defendant's offense necessitating supervised release in the first place may weigh against the early termination of

---

[8] Mr. Parkins contends that the "2025 Guidelines amendments reflect national consensus that individualized assessment should favor termination for compliant, low risk defendants." (Reply at 4). Mr. Parkins does not cite any authority for this statement, nor is the Court aware of any. "[T]he policy statement in Section 5D1.4(b) restates the Court's existing authority to terminate a term of supervised release early pursuant to 18 U.S.C. § 3583(e)(1)." *United States v. Gonzalez*, No. 25-CR-00483, 2025 WL 3274491, at *2 (S.D.N.Y. Nov. 25, 2025); *see also Tirado*, 2026 WL 1088721, at *3 ("This Court has not identified any authority to suggest that this recent policy statement alters the legal standard for granting a motion for early termination.").

supervised release. *See United States v. Rummings*, No. 19-CR-06139, 2026 WL 805627, at *3 (W.D.N.Y. Mar. 24, 2026) (denying early termination of supervised release based in part on the serious nature of the defendant's drug trafficking crimes); *Gonzalez*, 2025 WL 3274491, at *3 (same).

Mr. Parkins further argues that he has successfully served four times the minimum one-year requirement to be eligible for early termination of supervised release. (Motion at 3). This fact, however, actually weighs against granting his request. Mr. Parkins received a substantial 10-year term of supervised release based on the serious nature of the offense and he has served less than half of the supervised release term imposed. Courts have routinely declined to terminate supervise release early where the defendant has served less than half of the term imposed. *See United States v. Pestana*, No. 08-CR-00581, 2023 WL 2898662, at *3 (S.D.N.Y. Apr. 11, 2023); *United States v. Young*, No. 20-CR-00499-2, 2026 WL 1045121, at *1-2 (S.D.N.Y. Apr. 17, 2026); *Gonzalez*, 2025 WL 3274491, at *2; *United States v. Deleon-Medina*, No. 15-CR-00554, 2025 U.S. Dist. LEXIS 218200, at *7 (E.D. Pa. Nov. 5, 2025) (concluding that although the defendant has demonstrated that he as on his way to rehabilitation and had made personal and professional progress, the court was hesitant to terminate supervised release where he has not even served half of his term); *United States v. Snody*, No. 16-CR-20322, 2024 U.S. Dist. LEXIS 34381, at *7-8 (E.D. Mich. Feb. 28, 2024) (denying termination of supervised release as the defendant had completed less than half of his eight-year term and noting that the defendant "should at least complete the statutory minimum term of five years before his supervised release is terminated").

Mr. Parkins also received the mandatory minimum 101-month term of imprisonment, adjusted for the time he spent in state custody on related charges, on his underlying offense. Terminating his supervised release before he has even served the five-year mandatory minimum

term of supervised release risks creating unwarranted sentencing disparities with other defendants who have committed similar crimes. *See United States v. Linick*, No. 13-CR-00120, 2023 WL 3570664, at \*2 (E.D.N.Y. May 18, 2023); *United States v. Ottey*, No. 19-CR-00334, 2024 U.S. Dist. LEXIS 4664, at \*8 (E.D.N.Y. Jan. 9, 2024); *Snody*, 2024 U.S. Dist. LEXIS 34381, at \*8.

Mr. Parkins further contends that his supervised release status may disqualify him from certain professional opportunities, trigger additional scrutiny from employers, and create obstacles to his professional advancement and economic integration. (Reply at 7). Mr. Parkins has not demonstrated the veracity of these assertions or provided any specific examples to buttress his claims. "[G]eneral contentions that the conditions of supervised release are impinging on Defendant's business opportunities" do not establish that early termination of supervised release is appropriate. *United States v. Eligoola*, No. 24-CR-00383, 2026 WL 818722, at \*1 (S.D.N.Y. Mar. 25, 2026).

Finally, Mr. Parkins correctly urges that "proof of exceptional or changed circumstances is not a prerequisite to early termination of supervised release." *Pestana*, 2023 WL 2898662, at \*2. Therefore, while Mr. Parkins has not established any exceptional or changed circumstances warranting early termination of supervised release, he is not required to for the Court to grant his motion so long as his conduct, the interest of justice and the relevant § 3553(a) factors weigh in favor of early termination. Nonetheless, it remains true that "full compliance with the terms of supervised release, without more, generally does not warrant early termination . . . [because] if every defendant who complied with the terms of a supervised release were entitled to early termination, the exception would swallow the rule." *United States v. Kassim*, No. 15-CR-00554, 2020 WL 2614760, at \*2 (S.D.N.Y. May 22, 2020); *see also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (an "unblemished" record post-incarceration alone is not enough to

10

justify early release). The Court agrees with the Government and Probation Office that Mr. Parkins' continued sex offender treatment and supervision terms serve to protect the public and to provide him with necessary treatment. *See Ottey*, 2024 U.S. Dist. LEXIS 4664, at *8 (continued supervision "would help ensure that [the defendant] remains sober and continues to be a productive member of society."); *United States v. Solano*, No. 19-CR-00017, 2023 WL 4599937, at *3 (E.D.N.Y. July 18, 2023) (crediting the defendant's participation and substantial progress made in sex offender treatment but denying early termination of supervised release because, *inter alia*, additional treatment would benefit the defendant, and the treatment provider "did not opine that defendant's treatment is complete or recommend that it be terminated.").

The Court commends Mr. Parkins' compliance with all supervision terms, good behavior, consistent employment and step-down treatment schedule as laudable accomplishments. They were similarly fully expected of him and therefore do not warrant early termination of supervised release. The serious nature of the offense and the Court's findings as to the need to continue to protect the public, to provide Mr. Parkins with needed medical care in the most effective manner, and to avoid unwarranted sentencing disparities also weigh against early termination of supervised release.

## CONCLUSION

For the foregoing reasons, Defendant's motion for early termination of supervised release is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 4, and mail a copy of this Opinion and Order to Mr. Parkins at 30 High Ridge Lane, Middletown, New York 10940.

**SO ORDERED:**

Dated: White Plains, New York
June 9, 2026

Philip M. Halpern
United States District Judge